1  **WO**

2

3

4

5

6                    IN THE UNITED STATES DISTRICT COURT

7                      FOR THE DISTRICT OF ARIZONA

8

9

10  Henry J. Wojtunik,                    )

11                  Plaintiff,            )    No. CV-03-2161-PHX-PGR
                                          )
12          vs.                           )
                                          )    <u>OPINION AND ORDER</u>
13  Joseph P. Kealy, et al.,              )
                                          )
14                  Defendants.           )
    _____)

15

16          As a result of the Court having entered its opinion (doc. #90) on September

17  26, 2005 dismissing the plaintiff's Amended Complaint with leave to amend, s*ee*

18  <u>Wojtunik v. Kealy</u>, 394 F.Supp.2d 1149 (D.Ariz. 2005), the plaintiff filed a Second

19  Amended Complaint for Violation of the Federal Securities Laws (SAC) (doc. #91)

20  on December 19, 2005.  The SAC alleges federal and state securities fraud and

21  other claims arising from the plaintiff's sale of his company in February of 2001 to

22  International FiberCom, Inc. (IFC).   Pending before the Court are the Motion to

23  Dismiss Second Amended Complaint (doc. #99) filed by defendant Anthony T.

24  Baumann and the Motion to Dismiss Second Amended Complaint by Defendants

25

26                                     - 1 -

1  Joseph P. Kealy and Terry W. Beiriger (doc. #100).[1]  Having considered the

2  parties' memoranda in light of the allegations of the SAC, the Court finds that

3  Kealy and Beiriger's motions should be granted in part and denied in part and

4  that Baumann's motion should be denied.[2]   THIS OPINION AND ORDER IS

5  NOT FOR PUBLICATION.

6  Counts I and III[3]

7      Kealy, IFC's CEO during the relevant time period, and Beiriger, IFC's CFO

8  during the relevant time period, seek the dismissal of Count I of the SAC, which

9  alleges a violation of § 10(b) of the Securities Exchange Act of 1934 and SEC

10  Rule 10b-5, and of Court III, which alleges a violation of A.R.S. § 44-1991(A), the

11  Arizona counterpart to § 10(b).  Baumann, IFC's COO during the relevant time

12  period, seeks the dismissal of Count III as it pertains to him; Baumann has filed a

13  joinder in all of the arguments raised by Kealy and Beiriger in their motion.  While

14  Kealy and Beiriger (and Baumann through his joinder) contend that certain

15  _____

[1]

16     The moving defendants are the sole remaining defendants in this action; the Court
17  dismissed the other six defendants named in the SAC from this action with prejudice based
    upon the plaintiff's statements in various filed documents that he did not oppose their dismissal.
18  The dismissal of these other defendants effectuated the dismissal of Count V of the SAC given
    that Count V pertains only to the "outside director defendants", all of whom have now been
19  dismissed with prejudice.

[2]

20     Because the Court thoroughly discussed the relevant facts and legal principles
21  governing this action in its previous published opinion, the Court discusses herein only those
    facts and legal principles minimally necessary for the resolution of the motions to dismiss; the
22  Court also discusses only those specific arguments raised by the parties that the Court deems
    necessary to the resolution of the motions.  In resolving the pending motions, the Court
    incorporates by reference the relevant portions of its earlier opinion.

23

[3]

24     Given that a § 44-1991 claim is subject to the same strict pleading requirements as a
    § 10(b) claim, see A.R.S. § 44-2082, the Court will not separately discuss Count III and the
25  Court's comments regarding Count I, where applicable, are to be construed as applying equally
    to Count III.

26                          - 2 -

1  allegations in these counts should be dismissed with prejudice, and that the

2  plaintiff should be required to file a third amended complaint deleting those

3  allegations, they do not cite to any case law supporting that type of a limited

4  dismissal and the Court declines to adopt their position.  The issue as the Court

5  sees it is whether there are any sufficient allegations in the SAC that support a

6  § 10(b) claim and/or § 1991 claim against any or all of the moving defendants.

7         In order for a § 10(b) claim to survive a motion to dismiss, the claim must

8  meet both the particularity requirements of Fed.R.Civ.P. 9(b) and the exacting

9  pleading standards of the Private Securities Litigation Reform Act (PSLRA). In re

10 GlenFed, Inc. Securities Litigation, 42 F.3d 1541, 1548 (9th Cir. 1994) (en banc).

11 Under the PSLRA, the Court must determine if the facts of the complaint, taken

12 as a whole, raise a strong inference that the defendants intentionally or with

13 deliberate recklessness made false or misleading statements. Ronconi v. Larkin,

14 253 F.3d 423, 429 (9th Cir. 2001).  In making this determination, the Court

15 recognizes that the bar of the PSLRA should not be raised any higher than is

16 required under its mandates so as not to foreclose the litigation of legitimate

17 securities fraud actions. No. 84 Employer-Teamster Joint Council Pension Trust

18 Fund v. America West Holding Corp., 320 F.3d 920, 946 (9th Cir.), *cert. denied*,

19 540 U.S. 966 (2003).

20         A.  Sufficiency of Allegations re Misrepresentations and Omissions

21         The SAC generally alleges that the defendants violated § 10(b) and

22 § 44-1991 by participating in IFC's systematic, widespread, and significant

23 overstatement of its revenues through accounting misfeasance and other GAAP

24 violations, which misrepresentations were reflected in IFC's 1999 and 2000

25 financial statements. The Ninth Circuit recognizes that the overstating of

26                                              - 3 -

revenues may state a claim for securities fraud because it is a violation of GAAP to recognize revenue before it is earned.  In re Daou Systems, Inc., 411 F.3d 1006, 1016 (9th Cir. 2005), cert. denied, 126 S.Ct. 1335 (2006).  The Court concludes that certain of the plaintiff's allegations in the SAC regarding misrepresentations and omissions are sufficiently specific and detailed to meet the pleading requirements of the PSLRA.  These include the allegations contending that IFC engaged in accounting fraud for the purpose of overstating its revenues by manipulating its percentage of completion for works in progress (WIP) accounting method, by booking the bogus Tech Net sale, by overstating the value of the inventory of its newly-purchased United Tech subsidiary, and by failing to timely disclose the importance of its Velocita contract and the financial troubles of its California operations.[4]

B.  Sufficiency of Allegations re Scienter

The defendants argue that the SAC does not properly plead scienter as to them with regard to certain specific accounting fraud allegations.   Rather than determining if the scienter-related allegations of the SAC in fact sufficiently show that each defendant had the requisite state of mind as to every alleged fraudulent

---

[4] The Court has already found that the Tech Net sale allegations were sufficiently detailed for PSLRA purposes and were sufficiently linked to Kealy and Baumann.  See 394 F.Supp.2d at 1160-61.  Kealy and Beiriger argue in their motion, but not in their reply, that the WIP-related allegations in the SAC should be dismissed with prejudice because the SAC does not show what the properly reported revenues should have been for the years at issue compared to what IFC actually reported.  To the extent that the defendants have not waived this argument by failing to address it in their reply, the Court concludes that the amended accounting-related allegations of the SAC, which include allegations setting forth with sufficient particularity the relationship between the fictitious revenue booked and the revenue and income reported on IFC's 1999 and 2000 financial statements, are sufficient in that they show that the alleged GAAP violations constituted widespread and significant inflation of revenue.  See In re Daou Systems, 411 F.3d at 1016-17.

or deceptive act, the Court need only determine if the allegations of the SAC, even if individually lacking in sufficient detail, are sufficient in their totality to create a strong inference that these defendants acted with deliberate or conscious recklessness. No. 84 Employer-Teamster Joint Council Pension Trust Fund v. America West Holding Corp., 320 F.3d at 938.  The Court concludes that the SAC, taken as whole and viewed in the plaintiff's favor, pleads particularized facts related to Counts I and III in sufficient detail to give rise to a strong inference that all three defendants knowingly engaged in fraudulent and deceptive conduct related to IFC's financial condition.

Significant violations of GAAP standards can provide evidence of scienter so long as they are pled with particularity. In re Daou Systems, Inc., 411 F.3d at 1022.  The Court has already concluded that scienter has been sufficiently shown as to Kealy and Baumann with regard to their roles in personally ordering IFC officials to fraudulently book the bogus $1.2 million Tech Net sale as revenue knowing that the customer had already cancelled the order, and as to Kealy by his signing of IFC's 1999 10-K knowing that it contained false financial information related to the Tech Net sale. *See* 394 F.Supp.2d at 1167-68. The SAC includes further allegations sufficiently showing scienter as to Kealy such as the allegations specifically relating to Kealy's direct and knowing participation in IFC's deliberate overstatement of its assets by its failure to write down United Tech's allegedly worthless inventory after IFC purchased the company.

The SAC sufficiently alleges scienter regarding Bieriger's role in the GAAP violations through the allegations, for example, that he signed IFC's 10-K and 10-Q financial reports during the relevant time period, *see* 394 F.Supp.2d at 1164, after having been informed various times by Naybor and/or Tedesco, the

president and controller, respectively, of IFC's Compass Communications

subsidiary, that the IFC's WIP accounting practices were inappropriate and

resulted in materially inaccurate financial reports.  The SAC also sufficiently

alleges that Baumann directly and deliberately participated in the GAAP violations

despite having been repeatedly informed by knowledgeable company officials

that the WIP accounting practices were improper and resulted in materially

inaccurate financial reports.

Furthermore, while the amended allegations of the SAC sufficiently

detailing the defendants' stock sales in late February-early March of 2000 do not

alone establish scienter, the stock sales support the allegations of scienter in that

the SAC sufficiently alleges the suspiciousness of the timing of the sales in

relation to such underlying circumstances as the fraudulent booking of the Tech

Net sale in order to boost IFC's 1999 year-end earnings.  These allegations,

together with the SAC's specific allegations of deliberate accounting

misfeasance, are sufficient to create a strong inference of scienter.  In re Daou

Systems, 411 F3d at 1024.

C. Sufficiency of Allegations re Loss Causation

The defendants all argue that the SAC fails to adequately plead loss

causation under Dura Pharmaceuticals, Inc. v. Broudo, 544 U.S. 336, 125 S.Ct.

1627 (2005).[5]   While loss causation is a basic element of a § 10(b) claim, it need

only be alleged so as to meet the "fair notice" requirement of Fed.R.Civ.P.

8(a)(2).  See id., 544 U.S. at 346, 125 S.Ct. at 1634; In re Immune Response

---

[5]     Kealy and Beiriger filed a joinder in Baumann's motion related to the loss causation issue.

1   Securities Litigation, 375 F.Supp.2d 983, 1025 (S.D.Cal. 2005).  Loss causation

2   allegations are adequate if they "demonstrate a causal connection between the

3   deceptive acts that form the basis for the claim of securities fraud and the injury

4   suffered by the plaintiff."  In re Daou Systems, 411 F.3d at 1025.  The fact that

5   factors other than the alleged misrepresentations contributed to the investment's

6   decline in value does not bar recovery as long as the misrepresentations are

7   alleged to be a substantial cause of the decline in value. Id.

8           The Court concludes that the SAC, read as a whole in the light most

9   favorable to the plaintiff, minimally meets the Dura standard for pleading loss

10  causation.  The SAC alleges, through both its substantive paragraphs and its

11  Exhibit D (which illustrates the changing values of IFC's stock between January

12  3, 2000 and February 13, 2002), that the valuation of the IFC stock that the

13  plaintiff received for the sale of his company was artificially high as a result of the

14  defendants' accounting fraud which overstated IFC's revenues and assets and

15  that the value of IFC's stock thereafter declined, and subsequently became

16  worthless, after the true state of IFC's financial condition became publicly known

17  and IFC was forced to declare bankruptcy. See In re Daou Systems, 411 F.3d at

18  1026.

19  Counts II and IV

20          The defendants seek the dismissal of Count II of the SAC, which alleges a

21  violation of § 20(a) of the Securities Exchange Act, and of Count IV of the SAC,

22  which alleges a violation of A.R.S. § 44-1999, the Arizona counterpart to § 20(a),

23  both of which impose joint and several liability on persons who directly or

24  indirectly control a violator of the securities laws.

25          Kealy and Beiriger, in their sole argument directed at the "control person"

26                                      - 7 -

1   claims, conclusorily argue in their motion, but not in their reply, that the SAC does

2   not adequately allege a primary violation of the underlying federal and state

3   securities laws.  The Court rejects this argument in light of its finding herein that

4   the SAC does generally state a prima facie claim for both the § 10(b) claim and

5   the § 44-1991 claim.

6        Baumann argues in part that the § 20(a) claim should be dismissed as to

7   him because he is not a named defendant in Count I; his premise is that an

8   essential prerequisite to the first element of a § 20(a) claim is that a primary

9   violation claim be stated against the alleged controlling person.[6]   The Court

10  rejects this argument.  While secondary liability as a controlling person under

11  § 20(a) cannot exist without a primary violation, § 20(a) does not require that the

12  alleged controlling person be primarily liable under § 10(b).  *See* Paracor Finance,

13  Inc. v. General Electric Capital Corp., 96 F.3d 1151, 1161 (9th Cir. 1996) ("The

14  plaintiff need not show the controlling person's scienter or that they culpably

15  participated in the alleged wrongdoing.") (Internal quotation marks omitted);

16  *accord*, Howard v. Everex Systems, Inc., 228 F.3d 1057, 1065 (9th Cir. 2000)

17  ("Plaintiff need not show [in a § 20(a) claim] that the defendant was a culpable

18  participant in the [primary] violation."); Wool v. Tandem Computers Inc., 818 F.3d

19  1433, 1440 n.8 (9th Cir. 1987) (Court noted that to prevail on a § 20(a) claim, the

20

21        [6]

22        Baumann also argues in both his motion and in his reply that Count II's reference to
    the "Officer Defendants" as being included as defendants in the count, as well as in Counts IV
23  and VIII, does not refer to him because the term "officers defendants", as defined in paragraph
    27 of SAC, does not include him.  The Court summarily rejects this argument as frivolous
24  because it is patently obvious that paragraph 27 contains typographical errors and that the
    appropriate paragraphs of the SAC that define the term "Officer Defendants" are paragraphs 25
25  and 26 (which is directed solely at Baumann), not paragraphs "21-22" as stated in paragraph
    27.

26                                        - 8 -

1  plaintiff must prove that the controlled person violated a rule or regulation of

2  under the 1934 Act that caused injury to him.)  *See also*, Eastern Vanguard

3  Forex, Ltd. v. Arizona Corporation Commission, 206 Ariz. 399, 412, 79 P.3d 86,

4  99 (App. 2003) ("The plain language of [§ 44-1999] does not support a

5  requirement that a 'controlling person' must have actually participated in the

6  specific action upon which the securities violation is based.")

7  Baumann also briefly argues in his reply that the SAC does not adequately

8  allege that he was a controlling person under either § 20(a) or § 44-1999 because

9  the SAC merely alleges that he was an officer of IFC and had a close relationship

10  with Kealy.  The Court does not agree.  To meet the "control" portion of the

11  § 20(a) claim, a complaint need only allege that the defendant had the power to

12  control or influence the primary violators.  Wool, 818 F.3d at 1441; Howard v.

13  Everex Systems, 228 F.3d at 1065; Eastern Vanguard Forex, Ltd. v. Arizona

14  Corporation Commission, 206 Ariz. at 412, 79 P.3d at 99 (The plaintiff need only

15  show under § 44-1999 that the person targeted as a controlling purpose had the

16  legal power, either individually or as part of a control group, to control the

17  activities of the primary violator.)   The allegations of SAC, viewed in the plaintiff's

18  favor, sufficiently show that Baumann, as IFC's COO, was directly involved in

19  managing IFC's day-to-day affairs, which included involvement in IFC's

20  misrepresentation of its financial condition.  *See* Wool, 818 F.3d at 441 (Court

21  noted that it is reasonable to presume for § 20(a) purposes that a corporate

22  officer charged with the day-to-day operations of a public corporation had the

23  power to control or influence the particular transactions giving rise to the

24  securities violation.); Howard, 228 F.3d at 1065-66;  *see also*, 17 C.F.R.

25  § 230.405 (SEC defines "control" as "the possession, direct or indirect, of the

26

- 9 -

1  power to direct or cause the direction of the management and policies of a
2  person[.]")

3  Counts VI and VII

4       Count VI of the SAC alleges a common law fraud claim solely against
5  Kealy, and Count VII of the SAC alleges negligent misrepresentation claim solely
6  against Kealy.   Kealy argues, and the Court concurs, that both claims are barred
7  as a matter of law pursuant to Arizona's economic loss rule, which states that a
8  plaintiff who suffers only pecuniary injury as a result of the conduct of another
9  cannot recover those losses in tort and is limited to recovery under contract law.
10  Apollo Group, Inc. v. Avnet, Inc., 58 F.3d 477, 479 (9th Cir. 1995); Carstens v. City
11  of Phoenix, 206 Ariz. 123, 125, 75 P.3d 1081, 1083 (App. 2003).

12       The Court has already ruled that the negligent misrepresentation claim is
13  barred by the economic loss rule because it is in essence based on the non-
14  performance of the plaintiff's and IFC's merger agreement and is therefore in
15  reality a breach of contract claim masked as a tort claim.[7]  *See* 394 F.Supp.2d at
16  1171-72.

17       The only argument that the plaintiff makes as to why the economic loss rule
18  should not bar the common law fraud claim is that the rule is inapplicable
19  because the plaintiff was not in contractual privity with Kealy.[8]  The Court has

20  _____

21       [7]
22       The plaintiff states in both his response and in footnote 14 to the SAC that he
    reasserted the negligent misrepresentation claim in the SAC solely to preserve his right to
    appeal the Court's dismissal of that claim.

23

24       [8]
       The Court did not previously rule on the applicability of the economic loss rule to the
25  common law fraud claim because Kealy did not challenge the legal sufficiency of that claim in
    his earlier motion to dismiss the Amended Complaint.

26                                        - 10 -

already rejected the contractual privity argument with regard to the negligent

misrepresentation claim based on the <u>Carstens</u> case, 394 F.Supp. at 1171-72,

and concludes that the same reasoning bars the common law fraud claim.  As

stated by the <u>Carstens</u> court:

> Contrary to the Carstens' characterization, Arizona courts have never held that the application of the economic loss rule depends upon the plaintiff also having a viable contract claim against the defendant.  Instead, irrespective of a plaintiff's contractual claims against a defendant, the rule bars recovery of economic damages in tort because such damages are not cognizable in tort absent actual injury.  In this case, because the Carstens allege purely economic losses, their damages sound in contract, and, presumably, may be asserted against those defendants with whom the Carstens are in privity.  Thus, the rule does not prevent the Carstens from recovering their economic losses, but merely restricts them to suits against those defendants actually liable in contract.

206 Ariz. at 127, 75 P.3d at 1085.

Since the plaintiff cannot as a matter of law state a claim for either

negligent misrepresentation or common law fraud against Kealy under the facts

of this case, the Court will dismiss both claims with prejudice.

Count VIII

Count VIII of the SAC alleges a common law civil conspiracy claim against

all three defendants.  While Arizona may not recognize a separate tort of civil

conspiracy as Kealy and Beiriger argue, dismissal of this claim is not warranted

on that basis since Arizona does recognize "an action for damages caused by

acts committed pursuant to a conspiracy."  <u>Estate of Hernandez v. Flavio</u>, 187

Ariz. 506, 510, 930 P.2d 1309, 1313 (1997).  A civil conspiracy occurs when two

or more people agree to accomplish an unlawful purpose or to accomplish a

lawful object by unlawful means, causing damages.  <u>Wells Fargo Bank v. Arizona</u>

<u>Laborers, Teamsters and Cement Masons Local No. 395 Pension Trust Fund</u>,

1  201 Ariz. 474, 498, 38 P.2d 12, 36 (2002).

2      The Court disagrees with the defendants' argument that the SAC does not

3  contain any allegations sufficient to plead a civil conspiracy, and concludes,

4  viewing the totality of the allegations of the SAC in the plaintiff's favor, that the

5  SAC has sufficiently alleged that the defendants, albeit marginally so as to

6  Beiriger, agreed to fraudulently misrepresent IFC's financial condition and

7  undertook actions to carry out that agreement.  As the Court noted in its previous

8  opinion, an agreement between Kealy and Baumann to book the bogus Tech Net

9  sale in order to fraudulently overstate IFC's revenues is sufficiently alleged. 394

10  F.Supp. at 1173.   Beiriger is alleged, for example, to have knowingly participated

11  with Kealy and Baumann in imposing the allegedly fraudulent WIP accounting

12  procedures and to have participated with Kealy in concealing IFC's true financial

13  conditions by signing the allegedly false and misleading 10-K and 10-Q forms.

14      Therefore,

15      IT IS ORDERED that Count V (Aiding and Abetting Securities Fraud) of the

16  Second Amended Complaint is dismissed with prejudice as a consequence of the

17  previous dismissal of defendants Richard J. Seminoff, John P. Stephens, C.

18  James Jensen, John P. Morbeck, and John F. Kealy.[9]

19      IT IS ORDERED that Defendant Baumann's Motion to Dismiss Second

20  Amended Complaint (doc. #99) is denied.

21      IT IS FURTHER ORDERED that the Motion to Dismiss Second Amended

22  Complaint by Defendants Joseph P. Kealy and Terry W. Beiriger (doc. #100) is

23  granted to the extent that Count VI (Common Law Fraud) and Count VII

24  _____

[9]

25          *See* the Court's Order (doc. #108) entered on September 25, 2006.

26                              - 12 -

1   (Negligent Misrepresentation) of the Second Amended Complaint are dismissed

2   with prejudice, and is denied in all other respects.[10]

3       DATED this 30th day of September, 2006.

4

5

6       Paul G. Rosenblatt
        United States District Judge

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24      [10]

25          The parties are advised that the Court will be setting a Scheduling Conference by
        separate order.

26                                        - 13 -